[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10678

_____

BRIAN JAMES ALBERT,

Plaintiff-Appellant,

*versus*

ASSOCIATION OF CERTIFIED ANTI-MONEY
LAUNDERING SPECIALISTS, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cv-05464-SCJ

_____

Before NEWSOM, GRANT, and ABUDU, Circuit Judges.

NEWSOM, Circuit Judge:

Brian Albert signed up for a certification exam administered by the Association of Certified Anti-Money Laundering Specialists. He asked the Association to accommodate his learning and anxiety disorders by allowing him to take the closed-book exam in an open-book format. The Association offered him several other accommodations but denied his request for open-book testing. Albert sued the Association under § 309 of the Americans with Disabilities Act—a provision we interpret for the first time here. The district court granted summary judgment for the Association, holding that § 309 didn't require it to accede to Albert's open-book request because the accommodation would have fundamentally altered its exam. After careful consideration of the parties' positions, and with the benefit of oral argument, we affirm the district court's decision.

## I

### A

Brian Albert was working as a bank compliance officer when he decided he wanted to become a money-laundering examiner. Doing so requires passing a certification exam. As Albert describes it, the Association's certification exam is "the most prestigious and highly recognized [anti-money-laundering exam] by employers and law enforcement." Compl. ¶ 14, Doc. 1. The exam comprises 120 multiple-choice questions and aims to test a candidate's "proven knowledge in the detection and prevention of money laundering."

Oxman Decl. ¶ 7, Doc. 67.  Most importantly for present purposes, the exam is designed to be administered in a closed-book format. *Id.* ¶ 11.

Albert has anxiety and learning disorders, so he hoped to take the exam with accommodations, and, to that end, he completed and submitted the Association's two-part accommodation-request form.  In part one, Albert listed his disabilities and checked the boxes for various standard accommodations, including "Special seating or other physical accommodation," "Large Text/Magnified Screen," "Extended exam time," and "Separate testing area."  In a section allowing him to request other "special accommodations," Albert wrote that it "could be helpful" for him to have "the use of a computer to a) access the pronunciation of words" and to "b) access digital books in order to take tests in an 'open book' test style."  Part two of Albert's accommodation-request form included an evaluation by Dr. Kirsten Moore, a licensed psychologist.  Having assessed Albert's learning and anxiety disorders, Dr. Moore recommended additional time, small-group testing, preferential seating, and a computer that would enable Albert to hear the pronunciation of words.  She also stated that Albert "would benefit from permission to take [an] open book[] test."

After reviewing Albert's form, the Association notified him that it could provide some, but not all, of his requested accommodations.  On the one hand, the Association offered Albert special seating, a magnified screen, extended time, a separate testing area, and a reader to assist with the pronunciation of words.  On the

other hand, the Association refused his request to take the exam open-book. The Association gave two reasons: (1) Dr. Moore had indicated only that the open-book accommodation "would benefit" Albert; and (2) the exam was specifically designed to be administered in a closed-book format, so allowing Albert to take it open-book would fundamentally alter its nature. The parties continued to correspond for a while, but their communications eventually broke down over the open-book issue. The Association offered to fully refund Albert's registration fees, but he never responded.

## B

Albert sued the Association in federal court. As relevant here, Albert alleged that the Association had violated § 309 of the ADA, which, as relevant here, requires exam providers to make their certification tests "accessible to persons with disabilities or [instead] offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. In particular, Albert asserted that the Association had infringed § 309 by denying his request for open-book testing.

The Association moved for summary judgment. In support of its motion, the Association submitted a declaration from Mr. Steven Oxman, its Director of Product Management and Director of Global Certification and Training. Oxman explained in detail why the exam is administered in a closed-book format. The exam, he said, "is intended to test a candidate's working knowledge of, and competency with, [anti-money-laundering] concepts and principles, and his or her ability to internally process the circumstances

presented in each exam question without delay or reliance on external materials." Oxman Decl. ¶ 13. The exam, Oxman continued, "was purposefully not designed to be an open-book test because such a form would essentially test the candidate's ability to look up information, as opposed to [his] knowledge of the examination content." *Id.* ¶ 16. Oxman further explained that allowing a candidate to take the test open-book would "unfairly and substantially advantage that candidate over others" and "would lower the standard—for that particular candidate—for obtaining the CAMS designation." *Id.* ¶ 17. Finally, Oxman detailed the substantial costs of developing the closed-book exam and estimated that creating an open-book version would take some six months and require at least $50,000.

The district court granted summary judgment for the Association. It concluded that Albert's requested accommodation wasn't reasonable because the undisputed evidence showed that allowing him to take the exam open-book would compromise the test's "focus on mastery of a specific body of knowledge" in the anti-money-laundering field and thus "would fundamentally alter the nature of the exam." First Summ. J. Order 15, Doc. 114.

Albert appealed. In an unpublished decision, a panel of this Court held that "the district court applied the wrong legal standard in evaluating Albert's disability discrimination claim." *Albert v. Ass'n of Certified Anti-Money Laundering Specialists, LLC*, No. 21-12333, 2022 WL 1415867, at *1 (11th Cir. May 4, 2022). In particular, the panel emphasized that whereas Albert had "expressly

asserted [his claim] under Section 309 of the ADA, the provision relating to 'examinations and courses,'" the district court had mistakenly "evaluated Albert's discrimination claim under our established framework governing discrimination claims against 'places of public accommodation' under Section 302." *Id.* at *2. The panel recognized that this Court had "not previously construed" § 309, so it vacated and remanded the ruling, without further elaboration, to allow the district court to reevaluate Albert's claim under that provision. *Id.*

On remand, the district court again granted summary judgment to the Association. The court held that to establish a § 309 violation, Albert needed to prove three things: "'(1) that [he] is disabled; (2) that [his] requests for accommodation are reasonable; and (3) that those requests have been denied.'" Second Summ. J. Order 6, Doc. 154 (quoting *Mahmood v. Nat'l Bd. Of Med. Exam'rs*, No. 12-1544, 2012 WL 2368462, at *4 (E.D. Pa. June 21, 2012)) (alterations in original). Prongs one and three weren't in dispute, so the district court focused on prong two, concluding that Albert's demand for open-book testing "was not a reasonable request." *Id.* The court relied on Oxman's sworn statement, which Albert "did not substantively challenge," that allowing Albert "'to take the CAMS Exam in an open-book format would lower the standard—for that particular candidate—for obtaining the CAMS designation.'" *Id.* at 12 (citation omitted). In light of that evidence, the district court concluded that Albert's request for open-book testing would "chang[e] the fundamental nature of the Exam." *Id.* at 13. The district court also credited Oxman's "evidence of the

23-10678                 Opinion of the Court                      7

prohibitive cost of granting [Albert's] request for an alternative format for the Exam." *Id.* at 12.[1]

This appeal—Albert's second—ensued.

## II

The sole issue we must resolve is whether the district court was right to grant the Association summary judgment on Albert's § 309 accommodation claim.[2]  We conclude that it was.

---

[1] For reasons that aren't entirely clear, the district court went on to lay out the test that governs accommodation requests under § 302 of the ADA, which the court said requires a plaintiff to show that "(1) the requested accommodation is reasonable; (2) it is necessary; and (3) it does not fundamentally alter the nature of the services provided by the entity."  Second Order 8–9 (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n.38 (2001)).  Measured against *that* standard, the district court held that the open-book accommodation wasn't necessary because "no candidate was allowed to take the Exam in an open book format," because Albert offered no evidence "that the request for an open book format was linked to [his] disabilities," and because "allowing [Albert] to take the Exam in an open book format would give [him] an unfair advantage." *Id.* at 19.  For reasons explained in our earlier opinion, *see Albert*, 2022 WL 1415867, at \*2, § 309—not § 302—is the provision applicable to Albert's request, which pertains specifically to "examinations or courses related to . . . certification," 42 U.S.C. § 12189.  Accordingly, we deal here only with § 309.

[2] "We review a district court's grant of summary judgment de novo, 'view[ing] the evidence in the light most favorable to the non-moving party.'" *Gogel v. Kia Motors Mfg. of Ga.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (alteration in original) (citation omitted).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

**A**

As we noted in Albert's first appeal, § 309 is novel terrain for us. *See Albert*, 2022 WL 1415867, at \*3. In full, § 309 provides as follows:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189. Accordingly, an exam provider has an obligation either (1) to ensure that its test is "accessible to persons with disabilities" or (2) to "offer alternative accessible arrangements for [disabled] individuals." *Id.*

We needn't today comprehensively articulate § 309's elements and defenses. We find that we can decide the case more narrowly on the following ground: Whatever else § 309 may or may not require, it does *not* require a test provider to offer an accommodation that would fundamentally alter the nature of its exam.

That rule—that an exam provider isn't subject to § 309 liability when it refuses an accommodation that it can show would fundamentally change its exam—follows straightaway from the provision's text. Section 309 applies to a test provider's "examinations or courses" and, importantly, by its terms requires the provider to "offer *such* examinations or courses" in an accessible way.

23-10678                Opinion of the Court                9

42 U.S.C. § 12189 (emphasis added).   By employing the word
"such," § 309 assumes that both before and after the requested ac-
commodation, the exam is *the same exam*—in other words, that the
"alternative accessible arrangement" won't alter the exam's essen-
tial nature.   Accordingly, while § 309 requires an exam provider to
"offer alternative accessible arrangements" to people with disabili-
ties, that obligation doesn't extend to accommodations that the
provider can show would fundamentally alter its exam.   To take
what is perhaps a particularly obvious example, no one thinks that
§ 309 would require a flight school to modify its flying test by al-
lowing a blind applicant to use autopilot.   *See* Oral Arg. at 9:43–
10:01 (colloquy with Albert's counsel).   The reason, of course, is
that the ability to see is an essential ingredient of what a flight ex-
amination measures, and § 309 doesn't require the provider to ac-
commodate away that integral aspect of its exam.[3]

---

[3] In this respect, at least, § 309 resembles the failure-to-accommodate frame-
work that applies under § 302 and other statutes like the Fair Housing Act.
That framework allows a defendant to rebut a plaintiff's showing of facial rea-
sonableness by proving that the requested accommodation would "result in a
'fundamental alteration' of its program."   *Schaw v. Habitat for Human. of Citrus
Cnty., Inc.*, 938 F.3d 1259, 1266 (11th Cir. 2019) (citation omitted); *see also Mar-
tin*, 532 U.S. at 683 n.38.   To be sure, § 302 articulates the fundamental-altera-
tion defense in more express terms, *see* 42 U.S.C. § 12182(b)(2)(A)(ii), but for
reasons we have explained above the line, § 309's text entails the same basic
limitation.

## B

We have little trouble concluding, as the district court did, that Albert's request for open-book testing would have fundamentally altered the nature of the Association's exam.

The district court correctly concluded that Albert's request for open-book testing "would alter and lower the standard for certification." Second Order 12–13. As Oxman explained—and, importantly, as Albert never disputed—"the Exam 'was purposefully not designed to be an open-book test because such a form would essentially test the candidate's ability to look up information, as opposed to their knowledge of the examination content.'" *Id.* at 13 (quoting Oxman Decl. ¶ 16). The district court thus recognized that granting Albert's open-book request would change what the exam measures—no longer the candidate's ready, at-the-fingertips "knowledge of the examination content," but rather his "ability to look up information." *Id.* Because "[a]llowing [Albert] to take the Exam in an open book format would eliminate one of the aims of the Exam," the district court concluded—and we agree—that it would "chang[e] the fundamental nature of the Exam." *Id.* That was (and is) reason enough to reject Albert's § 309 claim—especially because Albert provided no evidence on summary judgment disputing Oxman's explanation.

To be sure, Albert asserts that the district court improperly "discredited evidence favorable to [him]." Br. of Appellant at 18. But neither of the items of "evidence" to which Albert points creates a genuine dispute of material fact on the crucial issue: whether

open-book testing would fundamentally alter the exam.  First, Albert cites Dr. Moore's evaluation, and specifically her statement on the accommodation form that he "would benefit from permission to take [an] open book[] test."  Martinez Decl. Ex. B at 12, Doc. 68. That Albert might "benefit" from open-book testing is clear enough—that's presumably true of test-takers the world over.  But the utility of an open-book arrangement has no bearing on the altogether separate question whether it would fundamentally alter the exam's nature.

Second, Albert says that he was given certain testing accommodations while attending the University of Northern Iowa.  But as evidence, he cites only his own complaint and an email exchange with the Association in which he stated that the University had "never complained" about his (unspecified) accommodation requests.  Br. of Appellant at 19; Martinez Decl. Ex. C at 2.  But Albert hasn't described what kinds of tests he took at Northern Iowa, nor has he explained how the University accommodated him.  Without at least *some* additional detail, Albert's assertion that the University gave him accommodations has no bearing on whether his request for open-book testing here would fundamentally alter the Association's exam.

### III

To sum up:  Section 309 of the ADA does not require a test provider to offer accommodations that would fundamentally alter its examination.  Here, Albert's request for open-book testing would undoubtedly have fundamentally altered the Association's

12                    Opinion of the Court                    23-10678

anti-money-laundering exam.  Accordingly, § 309 doesn't require that accommodation.  The district court's order granting summary judgment in the Association's favor is **AFFIRMED**.